UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FIRST STUDENT, INC. <br><br> Plaintiff <br><br> v. <br><br> JOE DUNCAN, STEVE'S MARINE RADIO, AND STEVE LUCAS; <br><br> Defendants | Civil Action No. 04CV 3890 (FLW) <br><br> **COMPLAINT UNDER THE RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT** |

Plaintiff, First Student, Inc. ("First Student"), by and through its attorneys Cozen O'Connor for its complaint, alleges as follows:

## NATURE OF THE ACTION

1.  This action arises out of a scheme perpetrated by the defendants to defraud First Student out of an indeterminate amount of money, in excess of $75,000 over a period of fifteen (15) years through the submission of inflated and fraudulent invoices for services supposedly rendered (the "Fraudulent Invoices") by Steve's Marine Radio ("SMR") to First Student.

2.  The Defendants perpetrated their scheme against First Student by submitting falsified and inflated invoices from SMR to First Student for services rendered. At the time that this scheme was perpetrated, Defendant Joe Duncan ("Duncan") was the Contract Manager ("CM") of First Student's office in Cologne, New Jersey. Defendant Steve Lucas ("Lucas") was the owner of SMR at all times relevant to this Complaint and an active participant in perpetrating the fraud with Duncan.

3.  Lucas provided Duncan with blank SMR invoices, which Duncan filled out and submitted by mail to First Student's headquarters for payment. The Fraudulent Invoices added

costs to the original and presumably inaccurate invoices submitted by Lucas on behalf of SMR. Duncan's fraudulent invoice added as much as $5,000.00 per month. First Student then paid SMR by check, sent through the mail, for the inflated invoice, knowingly submitted by Duncan. Defendants kept the difference between the charges in the original invoices and the payments made on the fraudulent invoices.

4. This fraudulent scheme occurred on a monthly basis for as many as fifteen (15) years, ending when Duncan left First Student to work for a competing transportation company, Lion Student Transportation, in July 2004.

5. As detailed below, Defendants through their conduct participated, directly or indirectly, in the affairs of an enterprise through a pattern of racketeering activity, and/or conspired to do so, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961, et seq.

## PARTIES

6. First Student is a company that, *inter alia*, owns and operates school bus fleets throughout the country. First Student is incorporated in Florida with a principal place of business and headquarters in Cincinnati, Ohio ("HQ").

7. Defendant Steve's Marine Radio ("SMR") is a sole proprietorship with a principal place of business at 6527 Rundle Avenue, Mays Landing, NJ 08330. SMR has been owned and operated by Lucas since 1934.

8. Defendant Steve Lucas is a 90 year old individual who is the owner and proprietor of SMR and who, along with Duncan, has engaged in a pattern of racketeering by using the United States Mail to commit fraud against First Student for a period of greater than fifteen (15) years.

2

9. Lucas' residential address is 6527 Rundle Avenue, Mays Landing, NJ 08330.

10. Defendant Joe Duncan worked for First Student or its predecessor companies in various capacities since 1987, beginning his career with First Student as a contract manager of First Student's Cologne, NJ location. In approximately 1989, Duncan was promoted to Region Operations manager, serving First Student region contracts out of the Cologne, NJ location. Beginning in approximately 1993, Duncan once again became First Student's contract manger of the Cologne, NJ location. Duncan worked as the contract manager up until he left First Student in July 2004 to work for Lion Student Transportation. At all times in question, Duncan worked out of First Student's Cologne, NJ location and held positions of authority and trust within First Student. At all times in question, Duncan worked in conjunction with SMR and Lucas to perpetrate a fraud against First Student for a period of as many as fifteen (15) years.

11. Duncan's business address is 750 W. Delilah Road, Pleasantville, New Jersey 08232 and his residence address is 4 North Decatur Avenue, Margate, New Jersey 08402

## JURISDICTION AND VENUE

12. This Court's jurisdiction is based upon 28 U.S.C.§§ 1331 and 1332, 18 U.S.C. §1964(a) because at least one of the causes of action arises under federal law and there is complete diversity between plaintiffs and defendants, and the amount in controversy exceeds $75,000.00. Additionally, this Court has supplemental jurisdiction under 28 U.S.C. §1367 to hear all other claims.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and 18 U.S.C. §1965 because all defendants reside in New Jersey and a substantial part of the events giving rise to the cause of action occurred in New Jersey.

14. Allocation to the Camden Vicinage is proper under L.Civ.R. 40.1 because the facts giving rise to the cause of action arose in Atlantic County, Defendants work and/or live in Atlantic County and First Student's counsel is located in Camden County.

## FACTUAL BACKGROUND

### Duncan's Role in First Student Business

15. Duncan became the Contract Manager ("CM") of First Student's operation location in Cologne, NJ in approximately 1987, then became First Student's Region Operations manager for a few years before returning as First Student's Cologne, NJ Contract Manager in approximately 1993, remaining as CM until July 2004, when he left First Student to work for Lion Student Transportation.

16. As the CM, Duncan was entrusted to operate the day-to-day functions of First Student's local transportation services business in Cologne, New Jersey (the "Business"). These functions included ensuring that First Student's fleet of buses were operating properly and arranging for all necessary repairs for First Student's vehicles.

17. In furtherance of these duties, Duncan oversaw the collection, review and payment of invoices submitted by vendors, including SMR and Lucas.

18. In fact, Duncan was entrusted with the sole responsibility to receive invoices from vendors, review them and forward them by mail to First Student's headquarters in Cincinnati, Ohio for payment.

19. During the more than 15 years which Duncan and Lucas perpetrated their multiple acts of fraud and larceny against First Student, they received payments from First Student in an indeterminate amount totaling in excess of $75,000.

4

## The Fraudulent Scheme

20.Duncan took advantage of his position of trust and responsibility at First Student to devise a scheme to, with the assistance of Lucas, defraud First Student by approving fraudulently inflated invoices from SMR, submitting them for payment to HQ, and keeping all of part of the overpayment.

21.Duncan's scheme was deceptively simple. Lucas provided Duncan with blank invoices from SMR.

22.Lucas submitted SMR's correct invoices to Duncan.

23.Duncan used the blank invoices to create the fraudulent invoices by increasing the amount owed by First Student to SMR.

24.Duncan then submitted the Fraudulent Invoices, which he had already approved, to HQ for payment.

25.Duncan's submission of the Fraudulent Invoices was made by either a private delivery service such as Federal Express or DHL, or by the United States Postal Service.

26.First Student then paid the Fraudulent Invoice by check sent by U.S. Mail directly to SMR.

27.Lucas deposited the checks SMR received from First Student. Lucas then withdrew cash from his bank or an automatic teller machine ("AMT") to pay Duncan his share of the ill gotten gain.

28.Duncan first conjured up this scheme in excess of 15 years ago, and submitted Fraudulent Invoices to First Student on a monthly basis for the subsequent 15 years, until he left First Student to work for a local rival in July 2004.

SNJ1\282656\1 099994.000

29. Working together, Lucas and Duncan conspired to submit and submitted Fraudulent Invoices nearly every month, overcharging First Student as much as $5,000.00 on a single invoice.

30. Each submission of a Fraudulent Invoice constituted a separate act of, *inter alia*, larceny by deceit, fraud, and mail fraud.

31. It was only by working together that Duncan and Lucas were able to perpetrate each of the fraudulent and criminal acts against First Student.

32. The fraudulent and criminal acts perpetrated by the criminal enterprise of Duncan, Lucas and SMR on First Student spanning at least fifteen (15) years constitutes a violation of RICO that allows First Student to recover actual damages and punitive damages.

## COUNT ONE - RICO

33. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 32 as if fully set forth herein.

34. At all relevant times, First Student was a "person" within the meaning of RICO, 18 U.S.C. §§1961(3) and 1964(c).

35. At all relevant times, Duncan was a "person" within the meaning of RICO, 18 U.S.C. §§1961(3) and 1962(c).

36. At all relevant times, Lucas was a "person" within the meaning of RICO, 18 U.S.C. §§1961(3) and 1962(c).

37. At all relevant times, SMR was a "person" within the meaning of RICO, 18 U.S.C. §§1961(3) and 1962(c).

38. At all relevant times, Duncan, Lucas and SMR formed an association-in-fact for the purpose of committing multiple counts of fraud on First Student. This association-in-fact was an "enterprise" within the meaning of RICO, 18 U.S.C. §1961(4).

39. At all relevant times, this enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. §1962(c).

40. At all relevant times, Duncan, Lucas, and SMR, acting as an enterprise, conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. §1961(5), in violation of RICO, 18 U.S.C. §1962(c).

41. Specifically, at all relevant times, Duncan, Lucas, and SMR engaged in "racketeering activity" within the meaning of RICO, 18 U.S.C. §1961(1), by engaging in the acts set forth above. The acts set forth above constitute a violation of 18 U.S.C. §1341 (mail fraud). Duncan, Lucas and SMR each committed and/or aided and abetted in the commission of two or more of these acts of racketeering activity.

42. The acts of racketeering activity referred to in the previous paragraph constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5). The acts alleged were related to each other by virtue of common participants (Defendants), a common victim (First Student), a common method of commission (mail fraud, among others), and the common purpose and common result of defrauding First Student in excess of $75,000 and enriching Duncan, Lucas and SMR at First Student's expense while concealing Duncan's, Lucas's and SMR's fraudulent activities.

43. As a result of Duncan's, Lucas's and SMR's violation of 18 U.S.C. §1962(c), First Student was defrauded of substantial monies it paid out due to Duncan's fraudulent scheme.

44. As a result of its misconduct, Duncan, Lucas, and SMR are liable to First Student for the losses in an amount to be determined at trial.

45. Pursuant to RICO, 18 U.S.C. §1964(c), First Student is entitled to recover threefold its damages plus costs and attorney's fees from Defendants Duncan, Lucas and SMR.

WHEREFORE, Plaintiff First Student respectfully requests that this Court enter judgment in its favor and against all defendants as follows:

(1) Awarding First Student damages, including compensatory, treble, and punitive damages, as well as pre-judgment and post-judgment interest in an amount to be determined at trial;

(2) Ordering the Defendants to disgorge to First Student all of the funds that they fraudulently received from First Student;

(3) Ordering Defendants to provide an accounting to First Student for any part of the monies that they at any time collected fraudulently from First Student;

(4) Awarding First Student the costs, expenses, and attorneys' fees incurred in prosecuting this action; and

(5) Such other relief as this Court deems just and proper.

## COUNT TWO – RICO CONSPIRACY

46. Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through 45 as if fully set forth herein.

47. At all relevant times, First Student was a "person" within the meaning of RICO, U.S.C. §§1961(3) and 1964(c).

48. At all relevant times, Lucas was a "person" within the meaning of RICO, 18 U.S.C. §§1961(3) and 1962(d).

49. At all relevant times, Duncan was a "person" within the meaning of RICO, 18 U.S.C. §§1961(3) and 1962(d).

50. At all relevant times, SMR was a "person" within the meaning of RICO, 18 U.S.C. §§1961(3) and 1962(d).

51. At all relevant times, Duncan, Lucas and SMR formed an association-in-fact for the purpose of defrauding First Student. This association-in-fact was an "enterprise" within the meaning of RICO, U.S.C. §1961(4).

52. At all relevant times, this enterprise was engaged in, and its activities affected interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. §1962(c).

53. As set forth in Count I, Duncan, Lucas and SMR conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. §1961(5), in violation of RICO, 18 U.S.C. §1962(c).

54. At all relevant times, Duncan, Lucas and SMR were associated with the enterprise and agreed and conspired to violate 18 U.S.C. §1962(c), that is agreed to conduct and participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §1962(d).

55. Duncan, Lucas and SMR committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect to objects thereof, including but not limited to the facts set forth above.

56. As a result of Duncan's, Lucas's, and SMR's violations of 18 U.S.C. §1962(d), First Student was defrauded of in excess of $75,000, or the amount of the overpayment made on the Fraudulent Invoices.

57. As a result of the conspiracy, Duncan, Lucas and SMR are liable to First Student in an amount to be determined at trial.

58. Pursuant to RICO, 18 U.S.C. §1964(c) First Student is entitled to recover threefold its damages plus costs and attorneys' fees from Duncan, Lucas and SMR.

WHEREFORE, Plaintiff First Student respectfully requests that this Court enter judgment in its favor and against all defendants as follows:

(1) Awarding First Student damages, including compensatory, treble, and punitive damages, as well as pre-judgment and post-judgment interest in an amount to be determined at trial;

(2) Ordering the Defendants to disgorge to First Student all of the funds that they fraudulently received from First Student;

(3) Ordering Defendants to provide an accounting to First Student for any part of the monies that they at any time collected fraudulently from First Student;

(4) Awarding First Student the costs, expenses, and attorneys' fees incurred in prosecuting this action; and

(5) Such other relief as this Court deems just and proper.

## COUNT THREE - FRAUD

59. Plaintiffs repeat and reallege each of the allegations contained in Paragraphs 1 through 58 as if fully set forth herein.

60. Defendants engaged in a fraudulent scheme to illegally enrich Duncan and Lucas by overcharging First Student for services rendered by SMR. Defendants fraudulently induced First Student into overpaying SMR for services rendered by making material misrepresentations as to the amount and cost of services rendered by SMR in each fraudulent invoice submitted to First Student by Duncan.

10

61. To the extent that Duncan, rather than Lucas, made these misrepresentations, Lucas aided and abetted Duncan's misrepresentations because he knew of the misrepresentations and provided substantial assistance by, among other things, providing the blank invoices for the creation of the fraudulent invoices and by depositing the checks containing the overpayments from First Student and withdrawing the overpayment amount in cash and transferring all or portions of that overpayment to Duncan

62. Defendants defrauded First Student into believing that SMR performed services and was owed payment for said services that were not actually performed by SMR and for which no payment was required.

63. In addition to these overt misrepresentations, the Defendants also executed the fraud by omission, specifically by failing to disclose the overpayments received by First Student and by failing to inform First Student that the nature of the transactions performed by SMR were not as outlined in the fraudulent invoices.

64. Defendants made these misrepresentations and omissions with knowledge of their falsity and with the intent that First Student rely upon them by approving the fraudulent invoices, by making payment to SMR based on the fraudulent invoices, and by continuing to do business with SMR in spite of the continuous nature of these fraudulent invoices.

65. First Student reasonably and justifiably relied on Defendants' misrepresentations and omissions by making payments to SMR based on the fraudulent invoices submitted by Duncan with the assistance and approval of Lucas and SMR.

66. Defendants are liable for all the damages caused by their own fraud in the amount of the overpayments made by First Student in response to the multiple occasions and submissions of the fraudulent invoices of SMR approved by and submitted by Duncan.

SNJ1\282656\1 099994.000

WHEREFORE, Plaintiff First Student prays for judgment in its favor:

(1) Awarding First Student damages, including compensatory and punitive damages, as well as pre-judgment and post-judgment interest in an amount to be determined at trial;

(2) Ordering the Defendants to disgorge to First Student all of the funds that they fraudulently received from First Student;

(3) Ordering Defendants to provide an accounting to First Student for any part of the monies that they at any time collected fraudulently from First Student;

(4) Awarding First Student the costs, expenses, and attorneys' fees incurred in prosecuting this action; and

(5) Such other relief as this Court deems just and proper.

## COUNT FOUR – BREACH OF FIDUCIARY DUTY

### (Against Duncan)

67. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 66 as if fully set forth herein.

68. Duncan, as First Student's Contract Manager and Region Operations Manager, undertook to act primarily for First Student in running the day-to-day operations of First Student's New Jersey transportation services.

69. First Student reasonably relied on Duncan's overt and implied representations and promises that he would act in a manner that would primarily serve the interests of First Student while working for them as a CM and Region Operations Manager. First Student reasonably placed confidence in Duncan, due in part to his employment as their CM and Region Operations Manager, and Duncan thereby acquired power and influence over First Student's decisions concerning the payment of invoices from Duncan's territory.

70.  The overt and implied representations and promises of Duncan and First Student's foreseeable and reasonable reliance on them gave rise to a fiduciary relationship between Duncan and First Student.

71.  Duncan owed First Student fiduciary duties of loyalty, of utmost good faith and integrity, to make full and accurate accounting and disclosures of material facts, to abstain from self dealing at the expense of First Student, and exercise the care, skill and diligence towards First Student's assets that a reasonably prudent person would exercise in regard to his own property.

72.  Duncan's misrepresentations and fraudulent submissions of invoices constituted a breach of the duty of loyalty because Duncan was acting adverse to the interests of First Student. In fact, Duncan took advantage of the trust placed in him by First Student by fraudulently doctoring invoices and submitting them to First Student for payment, even though Duncan was well aware that the payments were greater than those actually owed to SMR.

73.  As a proximate result of such breaches of duty, First Student has been damaged as previously alleged.

74.  Duncan's conduct was reckless, willful and wanton, with malice, demonstrated a complete want of care and attention to duty, and was in conscious disregard of First Student's rights and interests. First Student is therefore entitled to an award of punitive damages from Duncan.

WHEREFORE, Plaintiff First Student prays for judgment in its favor:

(1)  Awarding First Student damages, including compensatory and punitive damages, as well as pre-judgment and post-judgment interest in an amount to be determined at trial;

SNJ1\282656\1 099994.000

(2) Ordering the Defendants to disgorge to First Student all of the funds that they fraudulently received from First Student;

(3) Ordering Defendants to provide an accounting to First Student for any part of the monies that they at any time collected fraudulently from First Student;

(4) Awarding First Student the costs, expenses, and attorneys' fees incurred in prosecuting this action; and

(5) Such other relief as this Court deems just and proper.

Respectfully submitted,

COZEN O'CONNOR
Attorneys for Plaintiff, First Student, Inc.

Date: August 13, 2004

By: _____
Ira G. Megdal and
Douglas W. Frankenthaler
Cozen O'Connor
457 Haddonfield Road
Suite 300
Cherry Hill, NJ 08002
(856) 910-5019

SNJ1\282656\1 099994.000